1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JAMES A. BROWN,

                  Petitioner,

        v.

STEVE SINCLAIR,

                  Respondent.

CASE NO.  C10-5287 BHS/JRC

REPORT AND
RECOMMENDATION

Noted for October 29, 2010

      The underlying petition for a writ of habeas corpus has been referred to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1)(A) and(B), and Local Magistrate Judge's Rule MJR3 and MJR4.  Petitioner is seeking federal habeas relief, pursuant to 28 U.S.C. § 2254, from a state conviction for one count of felony driving while under the influence, DUI, and one count of driving while license revoked or suspended.  A jury found him guilty of the offenses on July 6, 2008 (Dkt. # 27, Exhibit 1).  The trial court imposed a 55-month sentence for the felony DUI and a concurrent 365-day sentence for driving while license revoked.

1   Petitioner has submitted a mixed petition that includes an exhausted claim and several

2   unexhausted claims.  This Court recommends that petitioner either amend his petition and delete the

3   unexhausted claims or dismiss the action and pursue his unexhausted claims in state court.  If he fails

4   to do so, then the District Court should dismiss his petition without prejudice.

5   **FACTS**

6   The Washington State Court of Appeals summarized the case as follows:

7   

8       Washington State Patrol Trooper Thomas Thorpe stopped Brown for
        speeding, changing lanes without signaling, and cutting off a truck. Thorpe and
9       his partner, Trooper Guy Gill, observed that Brown had watery and bloodshot
        eyes, slurred speech, and smelled of alcohol. Brown told Thorpe that he had had
10      a few drinks. Thorpe performed three field sobriety tests on Brown to determine
        whether he had been driving while under the influence of intoxicants: the
11      horizontal gaze nystagmus (HGN) test, the vertical gaze nystagmus (VGN) test,
        and the walk and turn test. Thorpe also asked Brown to do the one-legged stand,
12      which required him to count up from 1,000 while looking at his raised foot, but
        Brown declined because he could not do the counting. Based on his observations
13      of Brown's driving, appearance, and performance of the field sobriety tests,
        Thorpe arrested Brown for driving while intoxicated. When the troopers ran
14      Brown's identification card and discovered that his driver's license had been
        revoked, they booked him into custody. Brown refused to take a breath test at the
15      jail.
16
17      The State charged Brown with felony driving under the influence (DUI) of
        intoxicating liquor, based on the fact that he had four or more prior DUI
18      convictions within 10 years, and with driving while license revoked in the first
        degree, based on his status as an habitual traffic offender. The parties agreed to
19      stipulate that Brown had 4 prior DUI convictions within the previous 10 years.
        Trooper Thorpe testified about Brown's driving and his performance of
20      the field sobriety tests, explaining that Brown's execution of the tests supported
        his conclusion that Brown was driving under the influence of alcohol. During his
21      testimony, the State introduced a Department of Licensing report showing that
        Brown's license had been revoked the previous year because he was an[sic] habitual
22      traffic offender, and the court read the stipulation about Brown's prior convictions
        to the jury.
23
24      Trooper Gill also testified about Brown's erratic driving before the stop.
25      Although he could not see Brown's eyes during the nystagmus tests, he could see
        that Brown had difficulty with the walk and turn test. He also smelled intoxicants
26      on Brown's breath and testified that Brown had bloodshot and watery eyes and
        slurred speech. He opined that Brown was not able to safely operate his motor

REPORT AND
RECOMMENDATION - 2

vehicle at the time of the stop.

A state patrol toxicologist testified that there was a general consensus in the field of toxicology that the HGN test was a reliable predictor of impairment by drugs or alcohol. He referred to VGN as a subcategory of HGN testing and testified that it was an indicator of a higher level of alcohol impairment. Brown testified that he was not intoxicated on the night the troopers stopped his car. Indeed, he maintained on cross examination that he had nothing to drink on the day of the stop. He believed he was being arrested for an outstanding warrant and testified that he became upset at the jail when the troopers charged him instead with a DUI.

After the parties rested, the trial court instructed the jury to consider the stipulation only as proof that Brown had been convicted of 4 prior offenses within 10 years and not as proof of his current DUI charge. The prosecuting attorney then summarized the evidence of Brown's intoxication during closing argument: his driving, his appearance and conduct when stopped, and his performance of the field sobriety tests. The prosecutor also mentioned that Brown had refused a breath test despite his testimony that he had nothing to drink on the day of his arrest.

The prosecuting attorney's reference to the VGN test was brief:

And he goes one step further. He does something called a vertical nystagmus. [The toxicologist] indicated that's something, if you see it, is evidence of high-alcohol content, high-alcohol level within a person. And what Trooper Thorpe testified to is not only does he have those six clues [from the HGN test], he has that one, too. It's all there.

II Report of Proceedings at 374.  The jury found Brown guilty on both counts.

At sentencing, the State asked for the maximum of 60 months, while defense counsel requested a low-end sentence of 51 months. The court imposed a sentence of 55 months of confinement and 9-18 months of community custody, noting that the combination of confinement and community custody could not exceed 60 months. Approximately 5 weeks later, Brown filed a pro se motion to modify his judgment and sentence, maintaining that his sentence was unlawful because it did not reflect the 51-month sentence that both parties had recommended and that the trial court had actually imposed.

(Dkt. # 27, Exhibit 6).

1

## PROCEEDURAL HISTORY

2
Petitioner filed a notice of appeal and raised the following issues:

3
4
5

1.      Under the Sixth and Fourteenth Amendments to the U.S. Constitution, an accused person is entitled to the effective assistance of counsel. Mr. Brown was denied the effective assistance of counsel. Must his felony DUI conviction be reversed?

6
7
8

2.      Under the Sixth and Fourteenth Amendments to the U.S. Constitution, conviction must be reversed for ineffective assistance when counsel's deficient performance prejudices the accused person. In this case, defense counsel's deficient performance prejudiced Mr. Brown. Must his felony DUI conviction be reversed?

9
10
11
12
13
14

3.      Evidence that an accused person has repeatedly been convicted of the charged crime creates great danger of unfair prejudice. Defense counsel failed to seek bifurcation of Mr. Brown's felony DUI trial into two phases, to eliminate the danger of unfair prejudice caused by his four prior DUI convictions. Was Mr. Brown denied his constitutional right to the effective assistance of counsel under the Sixth and Fourteenth Amendments to the U.S. Constitution by his attorney's failure to seek bifurcation of the trial into two phases?

15
16
17
18
19

4.      Evidence of an accused person's prior misconduct similar to the charged crime creates a danger of unfair prejudice. Defense counsel failed to seek bifurcation of Mr. Brown's felony DUI trial, to eliminate the danger of unfair prejudice caused by Mr. Brown's status as a habitual traffic offender. Was Mr. Brown denied his constitutional right to the effective assistance of counsel under the Sixth and Fourteenth Amendments to the U.S. Constitution by his attorney's failure to seek bifurcation of the trial into two phases?

20
21
22
23
24
25

5.      An accused person may stipulate to highly prejudicial evidence and waive the right to a jury determination of an element relating to that evidence, in order to avoid the danger of unfair prejudice. Defense counsel did not seek to remove from the jury's consideration evidence of Mr. Brown's four prior DUIs and his status as a habitual traffic offender. Was Mr. Brown denied his constitutional right to the effective assistance of counsel under the Sixth and Fourteenth Amendments to the U.S. Constitution by his attorney's failure to seek removal from the jury's consideration evidence of Mr. Brown's four prior DUIs and his status as a habitual traffic offender?

26
6.      Novel scientific evidence is inadmissible in Washington courts unless generally accepted by the relevant scientific community. No American court (state or federal) has allowed evidence of vertical nystagmus to

prove a high level of alcohol impairment. Was Mr. Brown denied his constitutional right to the effective assistance of counsel under the Sixth and Fourteenth Amendments to the U.S. Constitution by his attorney's failure to object to evidence that his vertical nystagmus established a "high level of alcohol consistent with a higher level of impairment?"

7.   Where there is reason to doubt an accused person's competence, the due process clause of the Fourteenth Amendment to the U.S. Constitution requires a trial judge to inquire into the person's competence to stand trial. Mr. Brown testified and filed documents raising doubts about his competence to stand trial. Did the trial judge violate Mr. Brown's constitutional right to due process under the Fourteenth Amendment to the U.S. Constitution by failing to inquire into his competence to stand trial?

(Dkt. # 27, Exhibit 3).  The Washington State Court of Appeals affirmed the conviction and sentence in an unpublished opinion on September 9, 2008.  Petitioner filed a petition for discretionary review in the Washington State Supreme Court raising the following issues"

1.   Under what circumstances may the prosecution introduce testimony that vertical gaze nystagmus indicates "a high level of alcohol consistent with a higher level of impairment?"

2.   Under what circumstances does failure to seek bifurcation of a felony DUI trial into a guilt phase and a penalty phase deny an accused person the effective assistance counsel?

(Dkt. # 27, Exhibit 7).  On March 3, 2010, the Washington Supreme Court issued an order denying the petition for review. (Dkt. # 27, Exhibit 8).

In his federal habeas corpus petitioner raises the following grounds for relief;

1.   Ineffective assistance of counsel
   1.   Not objecting to testimony about vertical nystagmus;
   2.   Not objecting to "officer's purging themselves" (sic);
   3.   Testimony and post trial motion cast doubt on his competence; and
   4.   Deficient performance.

2.   Deny due process of Sixth and Fourteenth Amendments [because] without the vertical nystagmus testimony the four prior convictions and evidence of HTO's would be inadmissible.

REPORT AND
RECOMMENDATION - 5

1   (Dkt. # 6).  Respondent contends the first part of the ineffective assistance of counsel claim,

2   regarding counsel's failure to object to the introduction of testimony about the vertical nystagmus is

3   exhausted (Dkt. # 26, page 6).  Respondent contends the second and third sub-claims regarding the

4   officers being untruthful and competency are not exhausted and the final sub-claim is not a separate

5   claim.  Id.  Respondent also contends the second claim is not exhausted.  Id.

6

7       Petitioner filed a traverse and attempts to relitigate the facts and contests the information sent

8   to the jury (Dkt. # 28).  The traverse does not address the exhaustion argument in any meaningful

9   manner.

10                          **EVIDENTIARY HEARING NOT REQUIRED**

11      If a habeas applicant has failed to develop the factual basis for a claim in state court, an

12  evidentiary hearing in this court shall not be held unless the applicant shows that: (A) the claim

13  relies on (1) a new rule of constitutional law, made retroactive to cases on collateral review by the

14  Supreme Court that was previously unavailable, or if there is (2) a factual predicate that could not

15  have been previously discovered through the exercise of due diligence; and (B) the facts underlying

16  the claim would be sufficient to establish by clear and convincing evidence that but for constitutional

17  error, no reasonable fact finder would have found the applicant guilty of the underlying offense.  28

18  U.S.C. §2254(e)(2) (1996).

19

20      Petitioner's claims rely on established rules of constitutional law.  Further, petitioner has not

21  set forth any factual basis for his claims that could not have been previously discovered by due

22  diligence.  Finally, the facts underlying petitioner's claims are insufficient to establish that no

23  rational fact finder would have found him guilty of the crime.  Therefore, this court concludes that

24  there is no reason to conduct an evidentiary hearing.

25

26

1

## DISCUSSION

2       Federal courts may intervene in the state judicial process only to correct wrongs of a

3   constitutional dimension.  Engle v. Isaac, 456 U.S. 107 (1983).  Section 2254 explicitly states that a

4   federal court may entertain an application for writ of habeas corpus "only on the ground that [the

5   petitioner] is in custody in violation of the constitution or law or treaties of the United States."  28

6   U.S.C. § 2254(a)(1995).  The Supreme Court has stated many times that federal habeas corpus relief

7   does not lie for mere errors of state law.  Estelle v. McGuire, 502 U.S. 62 (1991); Lewis v. Jeffers,

8

9   497 U.S. 764 (1990); Pulley v. Harris, 465 U.S. 37, 41 (1984).

10       A habeas corpus petition shall not be granted with respect to any claim adjudicated on the

11   merits in the state courts unless the adjudication either: (1) resulted in a decision that was contrary

12   to, or involved an unreasonable application of, clearly established federal law, as determined by the

13   Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the

14   facts in light of the evidence presented to the state courts.  28 U.S.C. §2254(d).  Further, a

15   determination of a factual issue by a state court shall be presumed correct, and the applicant has the

16

17   burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C.

18   §2254(e)(1).

19       *A.       Exhaustion.*

20       In order to exhaust state remedies, petitioner's claims must have been fairly presented at

21   every level of appeal.  Ortberg v. Moody, 961 F.2d 135, 138 (9th Cir. 1992).  A federal habeas

22   petitioner must provide the state courts with a fair opportunity to correct alleged violations of

23   prisoner's federal rights.  Duncan v. Henry, 513 U.S. 364 (1995).  It is not enough that all the facts

24   necessary to support the federal claim were before the state courts or that a somewhat similar state

25

26

REPORT AND
RECOMMENDATION - 7

1   law claim was made.  Id., *citing* Picard v. Connor, 404 U.S. 270 (1971) *and* Anderson v. Harless,

2   459 U.S. 4 (1982).

3            The parties agree that the first sub claim of petitioner's ineffective assistance of counsel

4   claim -- regarding counsel's failure to object to the introduction of testimony about the vertical

5   nystagmus -- is exhausted.  Petitioner's second and third sub claims, on the other hand, were not

6   presented as federal claims to both the Washington State Court of Appeals and the Washington State

7   Supreme Court.  The second claim regarding perjury was not raised at all in the either court (Dkt. #

8   27, Exhibits 3 and 7).  The third claim was not raised before the Washington State Supreme Court

9   (Dkt. # 27, Exhibit 7).  In addition, the second ground for relief regarding the evidence of his prior

10  four DUI convictions and his Habitual Traffic Offender conviction was not raised in either court

11  (Dkt. # 3 and 7).  Thus, the petition is a mixed petition with one exhausted ground for relief and

12  several unexhausted grounds.

13           *B.        Mixed petitions.*

14           This petition contains both exhausted and unexhausted claims.  Federal courts cannot

15  consider mixed petitions.  Rose v Lundy, 455 U.S. 522 (1982).  However, a district court may deny

16  an entire petition on the merits without first requiring exhaustion.  See 28 U.S.C. § 2254(b)(2).

17  Here, denying the entire petition on the merits would not be proper as the last claim for relief has not

18  been briefed by both sides or ruled on by any state court.

19           The options available to the court are: 1) to hold the petition in abeyance while petitioner

20  returns to state court; 2) to give petitioner the chance to dismiss his unexhausted claims and go

21  forward on the only exhausted claim.  Dismissal without prejudice of the entire petition is not an

22  option because a federal court cannot dismiss a mixed petition without giving the petitioner the

23  opportunity to either return to state court, (dismiss on his own), or dismiss his unexhausted claims

1  and go forward on only the exhausted claims.  Rose v Lundy, 455 U.S. 522 (1982); Jefferson v.

2  Budge, 419 F.3d 1013 (9th Cir. 2005).

3      A petition may be held in abeyance on a motion from petitioner after the petitioner dismisses

4  his unexhausted claims first.  The procedure is only appropriate where there is good cause for failure

5  to exhaust the claims in the first place.  Rhines v. Weber, 544 U.S. 269, 277 (2005).  Petitioner has

6  filed a traverse to the answer (Dkt # 28).  He does not set forth any reason for failing to exhaust his

7  claims at every level of appeal.  Petitioner has not shown good cause for his failure to comply with

8  the rules associated with habeas corpus.  Holding the petition in abeyance would not be proper.

9      This leaves the court with the final option -- petitioner should be given the option of

10  dismissing his unexhausted claims and proceeding only on the first sub claim of petitioner's

11  ineffective assistance of counsel claim regarding counsel's failure to object to the introduction of

12  testimony about the vertical nystagmus, or dismissing the entire petition without prejudice so he can

13  attempt to exhaust his other claims.  If petitioner does not dismiss the unexhausted claims the entire

14  petition must be dismissed without prejudice.

## CONCLUSION

Based on the foregoing discussion, the Court should give petitioner thirty days to either dismiss his unexhausted claims and proceed only on the first sub claim of petitioner's ineffective assistance of counsel claim, or dismiss the entire petition without prejudice and return to state court. If petitioner takes no action, the entire petition should be dismissed without prejudice.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections.  See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  Thomas v. Arn, 474

REPORT AND
RECOMMENDATION - 9

1    U.S. 140 (1985).  Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is

2    directed to set the matter for consideration on October 29, 2010, as noted in the caption.

3        DATED this 1st day of October, 2010.

4

5

6    J. Richard Creatura

7    United States Magistrate Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

REPORT AND
RECOMMENDATION - 10